**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JEFF ELDRIDGE** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 5:19-CV-00227-OLG** |
| | § | |
| **WELLS FARGO ADIVSORS** | § | |
| **FINANCIAL NETWORK, LLC** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

Plaintiff's Original Petition should be dismissed because Plaintiff Jeff Eldridge failed to plead claims for relief that are plausible on their face. As to his wrongful termination claim, Plaintiff failed to plead that he was forced to commit an illegal act and failed to plausibly allege that his failure to commit an illegal act was the sole cause of his alleged constructive discharge. Plaintiff's negligent retention and negligent supervision claims are barred by the applicable two-year statute of limitations, fail for lack of an underlying tort, and are preempted under Texas law. Plaintiff further failed to plead a basis for the recovery of attorneys' fees. For these reasons, as more fully set forth herein, Defendant Wells Fargo Advisors Financial Network, LLC[1] seeks dismissal of Plaintiff's Original Petition.

## I.    FACTUAL BACKGROUND

On February 7, 2019, Plaintiff filed his Original Petition in the 224th Judicial District Court of Bexar County, Texas. Dkt. No. 1-3. Plaintiff's Original Petition asserts two theories of relief under Texas common law: (1) wrongful termination under the *Sabine Pilot* exception to the

---

[1] As stated in its Notice of Removal, Defendant was improperly named in this action. The correct defendant is Plaintiff's true employer, Wells Fargo Clearing Services, LLC. Should Plaintiff fail to correct this defect, Defendant reserves all rights to present evidence to support the misnomer and move for dismissal at the appropriate time.

at-will employment doctrine and (2) negligent retention and supervision with respect to the alleged conduct of various managers.  Defendant was served with Plaintiff's Original Petition on February 13, 2019.  On March 8, 2019, prior to the deadline for filing its answer, Defendant removed the state-court action to this Court.  Defendant did not file an answer in state court. Pursuant to Rule 81 of the Federal Rules of Civil Procedure, Defendant now files this Rule 12(b)(6) Motion to Dismiss.  *See* FED. R. CIV. P. 81(c)(2)(C) (setting forth deadlines by which defendant in a removed action that did not answer in state court must answer or present other defenses or objections).

In his Original Petition, Plaintiff alleges that in February 2012, seven years before he filed his Original Petition and almost five years before he voluntarily resigned his employment, he witnessed Financial Advisor Jimmy Guillot instruct notary Karen Jank to notarize a power of attorney without the signer being present.[2]  Dkt. No. 1-3 at ¶ 8.  Plaintiff further alleges that he reported this alleged notary fraud to his manager, Hugh Patterson.  *Id.* ¶ 9.  The illegal act he contends he was required to commit is stated thusly: "Plaintiff was required, by his supervisory financial advisor, Guillot, to use a Power of Attorney document which [sic] Plaintiff knew to be fraudulently manufactured by Guillot and the Notary, Karen Jank[,] in order to defraud the customer allegedly granting the Power of Attorney to obtain an investment through Defendant." *Id.* ¶ 34.  Plaintiff cites 8 U.S.C. § 1324c for the applicable statute carrying criminal penalties. *Id.* ¶ 35.  He further claims that he refused to use the "illegally obtained document" and as a result, "Guillot and Patterson engaged in a series of actions and inactions culminating in Plaintiff's discharge."  *Id.* ¶¶ 36–37.  According to Plaintiff, such actions occurred "solely

---

[2] In this regard, Plaintiff's allegations are somewhat imprecise—it is not clear whether the signature that Ms. Jank allegedly notarized outside the presence of the signer was that of a customer, the person granting the power of attorney, or some other third party.  Defendant does not believe that the identity of the signer is legally significant for purposes of this Motion to Dismiss.

because he refused to use the illegal document." *Id.* ¶ 38.

As to his negligence claims, Plaintiff recites a series of allegedly harassing events he experienced from 2012 until his voluntary resignation in October 2017. *See generally id.* ¶¶ 10–21. He attempts to hold Defendant liable for these actions under a negligent retention/negligent supervision theory, claiming that Defendant failed "to supervise and/or failed to take reasonable precautions to protect Plaintiff from the actions and inactions of Guillot, Patterson, and [Shari] White."[3] *Id.* ¶ 24. Plaintiff asserts that Defendant had a duty[4] to take reasonable precautions to protect him from the misconduct of its employees and to supervise its employees and breached this duty by not taking such precautions, failing to address misconduct and harassing treatment, and continuing to allow the supervisors to have authority over him after repeated complaints of harassment and misconduct. *Id.* ¶ 26–27. Plaintiff claims this breach resulted in emotional distress, including mental anguish that caused him to resign, which he claims to be a constructive discharge. *Id.* ¶ 28–30.

Even accepting all of the allegations in Plaintiff's Original Petition as true, as this Court is bound to do at the pleadings stage, Plaintiff has failed to set forth a facially plausible claim for wrongful termination, negligent retention, or negligent supervision. Each of these claims should be dismissed for the reasons set forth below.

## II.   STANDARD OF REVIEW

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint

---

[3] Defendant denies that it employed Guillot, Patterson, and White. Plaintiff has named the incorrect employing entity, as stated above in footnote 1. Should Plaintiff fail to correct this defect, Defendant reserves all rights to present evidence to support the misnomer and move for dismissal at the appropriate time.

[4] The Texas Supreme Court recently held that the existence of a duty in a negligent supervision case is not a foregone conclusion and instructed courts to use the risk-utility test in each instance to determine whether a duty exists. *See Pagayon v. Exxon Mobile Corp.*, 536 S.W.3d 499, 505–07 (Tex. 2017). Defendant denies that the duties Plaintiff asserts existed in this case and reserves the right to challenge the existence of a legal duty at the appropriate time.

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  A claim is "plausible" if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded facts as true, but need not do the same for legal conclusions.  *Id.*  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*  A claim is not plausible when it is based on nothing more than a "formulaic recitation of the elements of a cause of action" or consists merely of "naked assertions devoid of further factual enhancement."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

## III.   ARGUMENT & AUTHORITIES

Plaintiff has failed to meet the pleading standard on his wrongful termination claim because he has failed to allege that he was required to perform an illegal act that carries criminal penalties or that he was terminated for the sole reason that he refused to perform such an act.  His negligent retention and supervision claims fail because they are barred by the statute of limitations, lack an underlying tort, and are preempted by Texas state law.  Additionally, Plaintiff has failed to plead a basis for the recovery of attorneys' fees.  Because of these deficiencies, Plaintiff's Original Petition should be dismissed.

### A.      Plaintiff's Wrongful Termination Claim Should Be Dismissed

Dismissal of Plaintiff's wrongful termination claim is warranted.   In *Sabine Pilot v. Hauck*, 687 S.W.2d 733 (Tex. 1985), the Texas Supreme Court recognized "a very narrow exemption to the employment at-will doctrine," which covers "only the discharge of the employee for the sole reason that the employee refused to perform an illegal act."   *Sabine Pilot*, 687 S.W.2d at 735.   To plead the *Sabine Pilot* exemption to the employment at-will doctrine, a plaintiff must allege that (1) he was required to perform an illegal act that carries criminal penalties; (2) he refused to engage in the illegality; (3) he was discharged; and (4) the sole reason for his discharge was his refusal to commit an unlawful act.   *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003) (citing *Sabine Pilot*, 687 S.W.2d at 735; *Burt v. City of Burkburnett*, 800 S.W.2d 625, 626–27 (Tex. App.—Fort Worth 1990, writ denied)).   Plaintiff fails to meet this pleading standard.

### 1.      Plaintiff Fails To Plead that He Was Required To Perform an Illegal Act that Carries Criminal Penalties

Plaintiff's pleading deficiency on the first element is two-fold: first, he failed to allege that he was required to perform an illegal act and, second, he failed to set forth an illegal act that carries criminal penalties.   As to the latter deficiency, Plaintiff points to 8 U.S.C. § 1324c as the applicable statute purportedly carrying criminal penalties for the conduct in which he allegedly refused to engage.   Dkt. No. 1-3 ¶ 35.   His reliance on this statute is misplaced.   That section of the United States Code applies to penalties for document fraud in the context of immigration. *See* 8 U.S.C. § 1324c; *see also generally* 8 U.S.C. Ch. 12 (entitled "Immigration and Nationality").   Section 1324c is inapplicable to the present case and to Plaintiff's employment as alleged in the Original Petition.   As such, Plaintiff has failed to plead an illegal act carrying criminal penalties, an essential element of his wrongful termination claim.   *See Guthrie v. Tifco*

*Indus.*, 941 F.2d 374, 379–80 (5th Cir. 1991) (affirming dismissal where plaintiff failed to allege that the "unspecified customs regulations" he was instructed to violate carried criminal penalties).

In addition, to adequately plead that he was required to commit an illegal act, Plaintiff must allege that his employer required, not just requested, that he commit an illegal act.  *White*, 319 F.3d at 677 (citing *Burt*, 800 S.W.2d at 626–27); *see also Winters v. Hous. Chronicle Publ'g Co.*, 795 S.W.2d 723, 724 (Tex. 1990) (stating *Sabine Pilot* requires a plaintiff be "unacceptably forced to choose between risking criminal liability or being discharged from his livelihood"). Plaintiff alleges only that he "was required, by his supervisory financial advisor, Guillot, to use a Power of Attorney document which [sic] Plaintiff knew to be fraudulently manufactured by Guillot and the Notary, Karen Jank[,] in order to defraud the customer allegedly granting the Power of Attorney to obtain an investment through Defendant."  Dkt. No. 1-3 ¶ 34.  This bare assertion is not entitled to the presumption of truth under *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 679.

While Plaintiff makes the assertion that he was required to use the allegedly fraudulent document, he does not allege any of the facts or circumstances surrounding this alleged requirement.   In fact, Plaintiff appears to claim that he reported the alleged notary fraud immediately upon learning of it, before he was asked to use the document in any capacity.  Dkt. No. 1-3 ¶  8–9; *see Prigmore v. Wilson Engraving Co.*, No. 05-92-02125-CV, 1993 WL 209654, at *3 (Tex. App.—Dallas June 15, 1993, writ dism'd w.o.j.) (finding *Sabine Pilot* exception inapplicable when plaintiff unilaterally refused to perform an act he believed to be illegal). Plaintiff does not state that he was given a choice between using this document or being terminated, nor does he claim that he was intimidated or coerced into cooperation.  *See Ins.*

*Safety Consultants LLC v. Nugent*, No. 3:15-CV-2183-B, 2016 WL 2958929, at *3 (N.D. Tex. May 23, 2016) (dismissing *Sabine Pilot* claim where plaintiff failed to allege that she was required to testify falsely or lose her job and failed to explain what any alleged intimidation to that effect entailed).  Without further factual allegations to support the bare assertion of a legal conclusion, Plaintiff has failed to plead the first element of his claim.

> 2.    *Plaintiff Does Not Plausibly Allege that the Sole Reason for His Discharge Was His Refusal To Commit an Illegal Act*

Plaintiff also fails to meet the pleading standard on the fourth element of his *Sabine Pilot* claim, that the sole reason for his discharge was his refusal to commit an illegal act.  Plaintiff does not allege that he was terminated and, indeed, he cannot, because Plaintiff voluntarily resigned his employment in October 2017.  *See* Dkt. No. 1-3 ¶ 21 (alleging that workplace harassment "culminated in Plaintiff's constructive termination in October 2017").  Although some Texas intermediate courts of appeals have concluded that an alleged constructive discharge can form the basis of a wrongful termination claim, the Texas Supreme Court has never endorsed this approach.  *See Nezat v. Tucker Energy Servs., Inc.,* 437 S.W.3d 541, 546 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing Houston [1st Dist.] and Amarillo Courts of Appeals for proposition that courts have held constructive discharge can form the basis of a *Sabine Pilot* claim).

A constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign.  *Id.* at 546 (citing *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010)).  Thus, this final element requires Plaintiff to show that—solely because he refused to perform an illegal act—his employer made conditions so intolerable that he reasonably felt compelled to resign.  *See Marx v. Elec. Data Sys. Corp.*, 418 S.W.3d 626, 634–35 (Tex. App.—Amarillo 2009, no pet.) (citations omitted).  Plaintiff claims

that after he refused to use the "illegally obtained document" in 2012, "Guillot and Patterson engaged in a series of actions and inactions culminating in Plaintiff's discharge," which occurred over five years later, when Plaintiff voluntarily resigned in October 2017.  Dkt No. 1-3, ¶¶ 21, 36–37.  According to Plaintiff, the actions of his supervisors occurred "solely because he refused to use the illegal document."  *Id.* ¶ 38.

This alleged causal connection spanning more than five years is tenuous at best and is not plausible on its face.  *See Iqbal*, 550 U.S. at 570.  Even if Plaintiff had refused to perform an illegal act more than five years before his voluntary resignation, "allowing such a tenuous causal connection between the refusal and the discharge would permit any discharged employee to reach as far into the past as necessary to find a disagreement between himself and his employer that might establish a claim under *Sabine Pilot*."  *Enserch Expl., Inc. v. Thorne*, No. 11-98-00070-CV, 2000 WL 34234577, at *5 (Tex. App.—Eastland Jan. 13, 2000, no pet.); *cf. Marx*, 418 S.W.3d at 635 (reasoning by analogy to Title VII retaliation but-for causation standard that, under sole causation standard, even arguments based on close timing of events are insufficient standing alone to demonstrate the sole cause relationship required under *Sabine Pilot*).

Moreover, Plaintiff's Original Petition is rife with instances of allegedly harassing behavior that was, in Plaintiff's own words, the result of other incidents unconnected to his original refusal to use the document allegedly fraudulently notarized by Ms. Jank in 2012.  For example, the conduct alleged in Paragraphs 11 and 12 of the Original Petition appears to be in retaliation for Plaintiff's complaint about a different allegedly fraudulent practice, not his refusal to engage in alleged notary fraud.  The conduct alleged in Paragraph 14 is clearly stated to have happened as a result of Plaintiff's refusal to notarize unrelated documents, not as a result of Plaintiff's earlier alleged refusal to use documents allegedly fraudulently notarized by Ms. Jank.

And the conduct complained of in Paragraph 16 is alleged to be the direct result of Plaintiff's report of a different alleged violation of company policy, not his original failure to engage in allegedly criminal acts related to the documents notarized by Ms. Jank.

In sum, Plaintiff's own allegations belie the claim that Defendant made conditions intolerable for the sole reason that Plaintiff refused to engage in alleged notary fraud.  *See Marx*, 418 S.W.3d at 634–35.  Instead, Plaintiff offers multiple additional reasons for the behavior he complains of and, as a result, the claim that he was constructively discharged for the sole reason that he refused to engage in criminal activity lacks facial plausibility.

Plaintiff's allegations with regard to this final element of his wrongful termination claim fail for the additional reason that the sole causation standard does not permit Plaintiff to plead theories in the alternative.  "Under Texas law, an employee who alleges wrongful discharge for refusing to perform a criminal act cannot advance additional claims."  *Pease v. Pakhoed Corp.*, 980 F.2d 995, 997 n.1 (5th Cir. 1993).  To state a *Sabine Pilot* claim, Plaintiff's refusal to commit an illegal act must be the sole reason for his discharge.  Plaintiff, however, alleges with respect to his negligence claim that "Defendant's breach and negligence caused Plaintiff to suffer mental anguish to the point where he was constructively discharged from his employment . . . ." Dkt. No. 1-3 ¶ 30.  Plaintiff cannot have it both ways—either his refusal to commit an illegal act was the cause of his constructive discharge or Defendant's alleged negligence was.

The Fifth Circuit has made clear that, when a plaintiff advances a *Sabine Pilot* claim and a claim citing some other cause for termination, the *Sabine Pilot* claim cannot stand.  *See, e.g.*, *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 953 (5th Cir. 1994) ("Robertson's assertion that he was fired for another reason—in retaliation for investigating a *qui tam* action— precludes his common law [*Sabine Pilot*] claim.  The district court therefore properly dismissed

Robertson's wrongful discharge claim."); *Guthrie*, 941 F.2d 374, 379 ("Because the refusal to perform an illegal act must be the sole reason for the plaintiff's discharge, Guthrie's claims of age discrimination and wrongful discharge are mutually exclusive.").  Because Plaintiff cites his employer's alleged negligence as an alternative cause of his constructive discharge, his *Sabine Pilot* claim fails for this additional reason.

### B.    Plaintiff's Negligent Retention and Negligent Supervision Claims Should Be Dismissed

#### 1.    *Plaintiff's Negligence Claims Are Barred by Limitations*

The conduct Plaintiff complains of in his negligence-based claims falls outside the applicable limitations period.  Under Texas law, claims based in negligence are subject to a two-year statute of limitations.  *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Grp.*, 988 S.W.2d 746, 750 (Tex. 1999); *EEOC v. Simbaki, Ltd.*, No. H-12-0221, 2012 WL 1898882, at *4 (S.D. Tex. May 23, 2012) (stating that the statute of limitations for a negligent retention claim is two years).  A cause of action sounding in negligence accrues at the time of the act or omission alleged to constitute negligence.  *Kansa Reinsurnace Co., Ltd. v. Confessional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1371 (5th Cir. 1994); *see also Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990) ("Limitations commences when the wrongful act occurs resulting in some damage to the plaintiff." (citations omitted)).

Plaintiff's negligence claims consist of multiple isolated instances of allegedly harassing conduct occurring between February 2012 and October 2017.  *See generally* Dkt. No. 1-3 ¶¶ 10–21.  Plaintiff filed this action on February 2, 2019.  Any conduct alleged to have occurred prior to the limitations cutoff of February 2, 2017 is therefore outside the applicable statute of limitations.  To the extent Plaintiff's negligence claims rely on conduct outside the limitations period, as articulated in paragraphs 8 through 18, they should be dismissed.  *See KPMG Peat*

*Marwick*, 988 S.W.2d at 750 (finding negligence claim to be barred by applicable two-year statute of limitations); *Miles v. Wal-Mart Stores*, No. SA05CA1068FB, 2006 WL 1149169, at *2 (W.D. Tex. Apr. 26, 2006) (dismissing negligence claim as barred by limitations on Rule 12(b)(6) motion).

> 2. *Plaintiff Fails To Allege an Actionable Tort Underlying His Negligence Claims*

Plaintiff's negligence claims fail for the additional reason that he has failed to identify any actionable tort committed by Guillot, Patterson, or White. An employer cannot be held liable for negligent retention or supervision of an employee unless that employee committed an actionable tort. *Waffle House*, 313 S.W.3d at 800 & n.2; *see also Gonzales v. Willis*, 995 S.W.2d 729, 739 (Tex. App.—San Antonio 1999, no pet.) (holding that employer cannot be held liable for negligent hiring, retention, training, or supervision of employee unless employee committed an actionable tort), *overruled in part on other grounds by Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447–48 (Tex. 2004); *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("To prevail on a claim for negligent hiring or supervision, the plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff.").

None of the conduct alleged rises to the level of an actionable tort under Texas law. Plaintiff claims only that Guillot, Patterson, and White engaged in "harassing treatment and misconduct." *See* Dkt. No. 1-3 ¶¶ 10–20. Generalized harassment is not a recognized common law tort in Texas. *Cf. B.C. v. Steak N Shake Ops., Inc.*, 512 S.W.3d 276, 281 (Tex. 2017) (noting that sexual harassment is not a common law tort in Texas). Plaintiff points to no other underlying tort committed by Guillot, Patterson, or White. Accordingly, Plaintiff's negligent

retention and supervision claims must be dismissed. *See Whitley v. Growth Ventures, Inc.*, No. 08-CA-492-LY, 2008 WL 11333990, at *4–5 (W.D. Tex. Dec. 18, 2008) (recommending dismissal of negligent retention and supervision claims on Rule 12(b)(6) motion because plaintiff failed to plead an underlying tort to support the negligence claims), *report and recommendation adopted*, 2009 WL 10669369 (W.D. Tex. Feb. 9, 2009); *see also Nadeau v. Echostar*, No. EP-12-CV-433-KC, 2013 WL 1715429, at *3–4 (W.D. Tex. Apr. 19, 2013) (dismissing negligent supervision claim lacking underlying independent common law tort claim and collecting cases holding similarly).

3.   *Plaintiff's Claims Are Preempted by State and Federal Anti-Discrimination Statutes*

Plaintiff's negligence claims are further preempted under Texas and federal law.  The Texas Supreme Court has held that common-law negligence claims are preempted by the Texas Commission on Human Rights Act ("TCHRA"), the Texas state-law equivalent of Title VII.  *See Waffle House*, 313 S.W.3d at 807, 811–812 (holding that the TCHRA preempted an employee's common law negligence claim against her employer).  In *Waffle House*, the Texas Supreme Court found that common law negligence claims of negligent retention and supervision were incompatible with the TCHRA because the "alleged negligence is rooted in facts inseparable from those underlying the alleged harassment," and "where the gravamen of a plaintiff's case is sexual discrimination that lies at the heart of the TCHRA, allowing negligence damages for a TCHRA violation would eclipse the Legislature's prescribed scheme." *Id.* at 799.

In one of the few allegations not barred by limitations, Plaintiff claims that White repeatedly referred to his skin as "tan," "in an effort to berate Plaintiff's Native American heritage (Cherokee)."  Dkt. No. 1-3 ¶ 20.  Pursuant to *Waffle House*, to the extent Plaintiff's negligence claims are based on his membership in any protected category, they are preempted by

the TCHRA and Title VII and should be dismissed. *See Moody v. Chevron Phillips Chem. Co. LP*, No. H-17-1490, 2017 WL 2832737, at *4–5 (S.D. Tex. June 30, 2017) (granting dismissal of negligence claims under Rule 12(b)(6) as preempted by Title VII and TCHRA claims); *Dewvall v. Palio's Five Star, Inc.*, No. 4:15-CV-156, 2015 WL 5996453, at *5 (E.D. Tex. Oct. 14, 2015) (granting Rule 12(b)(6) motion and dismissing claims for assault and battery, negligence, negligent supervision, and negligent retention as preempted by the TCHRA in reliance on *Waffle House*); *Bookman v. AIDS Arms, Inc.,* No. 3:14–CV–814–B, 2014 WL 4968189, at *6 (N.D. Tex. Oct. 3, 2014) (granting Rule 12(b)(6) motion and dismissing plaintiff's negligent supervision and training claims as preempted by the TCHRA); *Mosely v. Wal–Mart Stores Tex. LLC*, No. 3:10-CV-2305-L, 2011 WL 2893086, at *2–3 (N.D. Tex. July 20, 2011) (granting Rule 12(b)(6) motion and dismissing with prejudice plaintiff's assault and battery and negligent retention claims as preempted by the TCHRA).

4.     *Plaintiff's Claims Are Preempted by the Sarbanes-Oxley Act*

Building on the Texas Supreme Court's reasoning in *Waffle House*, Plaintiff's negligence claims are also preempted by the Sarbanes-Oxley Act ("SOX"). The Texas Supreme Court construes the enactment of a statutory cause of action as abrogating a common law claim if there exists "a clear repugnance between the two causes of action." *Waffle House*, 313 S.W.3d at 802 (citation omitted). Such clear repugnance is present here. Pursuant to *Waffle House*, the question for this Court is whether an employer's liability for an adverse employment action allegedly related to reports of alleged financial crimes is limited to the carefully tailored SOX scheme that specifically covers employer liability for such adverse action. *See Waffle House*, 313 S.W.3d at 803. The reasoning from *Waffle House* provides ample basis for the Court to answer that question in the affirmative. *See id.* at 803–07.

As the plaintiff in *Waffle House* pursued a sexual harassment claim in tandem with her negligence claims, Plaintiff here could have, and did, pursue a remedy other than his negligence claims, specifically, a SOX whistleblower retaliation claim filed with the Occupational Safety and Health Administration.[5]  *See Waffle House*, 313 S.W.3d at 803.  This claim was predicated on the same conduct that underlies his negligence claims—that Plaintiff reported certain conduct he believed to be unlawful and suffered harassment as a result.  *See id.*  This SOX claim preempts his negligence claims.

SOX creates a private cause of action for employees of publicly traded companies who are retaliated against for engaging in certain protected activity.  *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 258 (5th Cir. 2014) (per curiam).   To prevail on a claim under SOX, an employee must show that (1) he engaged in protected whistleblowing activity, (2) the employer knew that he engaged in that activity, (3) he suffered an adverse action, and (4) the protected activity was a factor in the adverse action.  *Id.* at 259.  SOX prohibits a publicly traded company from retaliating against an employee who reports information regarding any conduct that the employee reasonably believes constitutes a violation of one of six enumerated categories. *Allen v. Admin. Review Bd.*, 514 F.3d 468, 477 (5th Cir. 2008).   These categories include 18 U.S.C. §§ 1341 (addressing frauds and swindles), 1343 (addressing wire fraud), 1344 (addressing bank fraud), 1348 (addressing securities and commodities fraud), any rule or regulation of the Securities and Exchange Commission, and any provision of federal law relating to fraud against shareholders.  18 U.S.C. § 1514A(a)(1).

Like a claim under the TCHRA or Title VII, a SOX whistleblower retaliation claim requires the exhaustion of administrative remedies.   The SOX process begins with filing a

---

[5] While evidence of Plaintiff's OSHA complaint is outside the purview of this Motion, which is decided only on the pleadings, Defendant reserves all rights to present evidence of Plaintiff's SOX complaint filed with the OSHA, which was previously investigated by the agency and thereafter dismissed.

complaint with OSHA. A SOX whistleblower claim must be filed within 180 days of a violation. *Id.* § 1514A(b)(2)(D); *Asadi v. G.E. Energy (USA), LLC*, 720 F.3d 620, 629 n.12 (5th Cir. 2013). The Fifth Circuit applies the same exhaustion standard in SOX retaliation cases that it applies in Title VII cases. *Wallace v. Tesoro Corp.*, 796 F.3d 468, 476 (5th Cir. 2015). Moreover, the Fifth Circuit believes that "[t]he reason for the exhaustion requirement in Title VII applies with equal force to SOX." *Id.* "[I]t's purpose is to trigger the agency's defined investigation and conciliation procedures." *Id.*; *see also Waffle House*, 313 S.W.3d at 805 ("These extensive investigation and resolution procedures are designed to favor conciliation over litigation . . . ." (citation omitted)).

A SOX whistleblower retaliation claim involves a carefully crafted statutory scheme, just like the TCHRA scheme implicated in *Waffle House*. *See generally* 18 U.S.C. § 1514A (setting forth the procedure related to enforcement for violations of the SOX whistleblower retaliation provision); *see also Waffle House*, 313 S.W.3d at 804 (reasoning by analogy to the Texas Workers' Compensation Act). The statutory scheme provides the procedure that governs an enforcement action, as well as the available remedies in the event that an employee prevails in an enforcement action. 18 U.S.C. §§ 1514A(b)–(c). Any person wishing to appeal OSHA's findings with respect to a SOX whistleblower retaliation claim must follow a specific administrative appellate procedure. *See generally* 29 C.F.R. §§ 1980.106–1980.110. A party is not entitled to judicial review of OSHA's determination until it has complied with this appellate procedure, and then the appeal must be taken to the applicable United States Court of Appeals.[6] *See id.* §§ 1980.112.

---

[6] Indeed, Plaintiff's negligence claims can fairly be seen as his attempt to perform an end-run around his own failure to follow the applicable appellate procedures after his SOX whistleblower complaint was dismissed by OSHA.

In sum, the law governing SOX retaliation claims "involves a unique set of standards and procedures." *Waffle House*, 313 S.W.3d at 807. If Plaintiff's negligence claims are allowed to coexist with this statutory claim,

> [t]he statutory requirements of exhaustion of administrative remedies and the purposes behind the administrative phase of proceedings, the relatively short statute of limitations, the limits on compensatory and punitive damages . . . and all other special rules and procedures governing the statutory [SOX] claim could be evaded in any case where any [harassing conduct] between the plaintiff and the coworker occurred.

*Id*. This Court therefore should conclude that Plaintiff's negligence claims are preempted by SOX.

> 5.    *Plaintiff's Claims Are Preempted by Texas Workers' Compensation Law*

Plaintiff's negligence claims are also preempted by the Texas Workers' Compensation Act ("TWCA"). The TWCA provides "the exclusive remedy" for an employee for "a work-related injury sustained by the employee." Tex. Lab. Code Ann. § 408.001(a); *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997). This "exclusive remedy" provision encompasses injuries sustained by an employee in the course of his employment as a result of his employer's alleged negligence. *Ward*, 102 F.3d at 203.

The Fifth Circuit's opinion in *Ward* is instructive in the present case. In *Ward*, the facts were as follows:

> In June 1991, Bechtel assigned Ward to a supervisory position on an engineering project. One of the engineers supervised by Ward was Mohan Manghnani. According to Ward's evidence, Manghnani was a difficult employee from the outset, which one of Ward's supervisors attributed to Manghnani's reluctance to being supervised by an African–American woman. Ward claimed that Manghnani's behavior became more openly hostile after she refused to recommend him for a promotion in January 1992. Manghnani's hostility erupted in several discrete incidents between June 1992 and April 1993 in which he allegedly threatened Ward and, on one occasion, elbowed her in the forearm. Even after Bechtel, at Ward's request, reassigned Manghnani to a different engineering project and building, he allegedly persisted in stating that he would "kick [Ward's] ass" and "get" her. Concerned for her safety and dissatisfied with

Bechtel's response to her concerns, Ward submitted her resignation on April 29, 1993.

*Id.* at 201–02.  The Fifth Circuit affirmed the district court's dismissal of Ward's negligent hiring, supervision, and retention claims on TWCA preemption grounds.  *Id.* at 203–04.  In so doing, it distinguished the facts presented in the case before it from a scenario involving an off-duty altercation between two employees of the same company, which would not be preempted by the TWCA.  *Id.* at 204.  The court concluded that the essence of Ward's case was that she was harmed while trying to do her job by another employee, that her employer failed to adequately respond, and that recovery was consequently foreclosed by the TWCA.  *Id.*

Here, Plaintiff unquestionably asserts a work-related injury in his negligence claims, arguing that he suffered emotional distress as a result of the conduct of other employees and that Defendant, his alleged employer, failed to adequately respond.  *See generally* Dkt. No. 1-3 ¶¶ 10–21, 26–28 (describing allegedly harassing conduct that occurred in the workplace).  His negligence claims are therefore preempted by the TWCA.[7]  *See Rosales v. City of San Antonio*, No.  SA-00-CA-0144, 143 LC 34310, 2001 WL 1168797, at *17 (W.D. Tex. July 13, 2001) ("Because there is no question that plaintiffs base their claims on the City's alleged negligence with respect to retaining and supervising De La Cruz at the workplace, recovery is foreclosed by the Texas Workers' Compensation Act.").

### C.    Plaintiff Pleads No Basis for an Award of Attorneys' Fees

Plaintiff's claim for attorneys' fees is deficient.  Under the American rule, "[e]ach litigant pays his own attorneys' fees, win or lose, unless a statute or contract provides otherwise."  *Baker Botts L.L.P. v. ASARCO LLC*, ___ U.S. ___, 135 S. Ct. 2158, 2164 (2015).  Plaintiff's Original

---

[7] Defendant recognizes that this preemption argument generally requires proof that an employer is covered by the workers' compensation insurance, evidence that is beyond the scope of a Rule 12(b)(6) motion.  Defendant nevertheless brings this argument to the court's attention in part to avoid any future argument from Plaintiff that it has been waived.

Petition does not identify any statutory or contractual basis for the recovery of attorneys' fees in this matter.  Courts have further made clear that attorneys' fees are not recoverable for *Sabine Pilot* or negligence claims brought under Texas law.  *See Garcia v. Sunbelt Rentals, Inc.*, 310 F.3d 403, 404–05 (5th Cir. 2002) (per curiam) (concluding that a *Sabine Pilot* claim does not provide for an award of attorneys' fees); *Gulf State Utils. v. Low*, 79 S.W.3d 561, 568 (Tex. 2002) ("No statute provides for the recovery of attorney fees in a negligence action.").  Absent a statutory or contractual provision authorizing an award of attorneys' fees, Plaintiff's claim for attorneys' fees should be dismissed.  *See Ins. Safety Consultants v. Nugent*, 2016 WL 2958929, *4–5 (dismissing request for attorneys' fees when plaintiff asserted claims under Texas law for wrongful termination and intentional infliction of emotional distress).

## IV.   CONCLUSION

In light of the foregoing, Defendant respectfully requests that Plaintiff's Original Petition be dismissed.

Dated:  March 15, 2019                    Respectfully submitted,


_/s/ Earl M. (Chip) Jones_
Earl M. (Chip) Jones, III
Texas Bar No. 00790982
LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX  75201-2931
214-880-8100
214-880-0181 (Facsimile)
ejones@littler.com

Nicole S. LeFave
Texas Bar No. 24085432
LITTLER MENDELSON, P.C.
100 Congress Avenue
Suite 1400
Austin, TX 78701
512-982-7250
512-982-7248 (Facsimile)
NLeFave@littler.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

On the March 15, 2019, I electronically submitted the foregoing document with the Clerk of the Court using the Electronic Case Filing system of the Court. I hereby certify that I have served all parties of record electronically as follows:

Alfonso Kennard, Jr.
Kennard Hernandez, PC
2603 Augusta Drive, 14th Floor
Houston, Texas 77057
Alfonso.kennard@kennardlaw.com

Bridgette Sopper Oliva
Kennard Hernandez, PC
100 N.E. Loop 410, Suite 610
San Antonio, Texas  78216
Bridgette.oliva@kennardlaw.com

*/s/ Earl M. (Chip) Jones*
Earl M. (Chip) Jones, III

FIRMWIDE:162876220.4 098702.1058